Mr. Justice Humphreys
delivered the opinion of the court:
Complainants are bankers, doing business in Washington City. Defendant Dexter wanted to borrow money, and proposed to give his promissory note, with a certificate of stock of the Great Falls Ice Company as collateral thereto. The certificate was the property of defendant Nash, and Nash loaned it to Dexter for the express purpose of raising money upon the faith of its security. Nash thereby became the security, so far as the paper-stock was concerned, for any money advanced upon the faith thereof. Complainants did discount the note of Dexter, gave him the money therefor, and took the certificate as collateral security. Dexter’s note fell due, and he failed to meet it, and still fails to pay the amount thereof. Nash had not signed an indorsement of the certificate, and none of the parties were aware of the fact until after the maturity of the note. After the maturity thereof and *531 the failure to pay by the maker, complainants applied to Nash to indorse and assig/n said certificate, which he refused to do. The amount of the discounted note being still unpaid, complainants exhibited their bill for a sale of said certificate. The stipulation of facts states that the money received from complainants was applied to the payment of a debt due to Van Bis wick from Dexter, which debt was secured by another certificate of stock belonging to Nash. This fact can make no difference as to complainants’ rights, except that it may show that Nash was profuse in his lending credit to Dexter, and that money-lenders would let out their funds on the faith of his securityship. The equity branch of the court decreed a sale of the said certificate of stock, and Nash appealed therefrom. We do not see how else the complainants could obtain the benefits of the security, unless they had asked the court to require Nash to indorse the paper. It is not pretended ' that the ceritficate of stock' was not handed over to Dexter for the purpose of receiving a loan on the faith thereof. There was, and is, no other branch of the court to which resort may be had to enforce just such a transaction than the equity side. Defendant Nash can repossess himself of the certificate by the payment to complainants of the amount due them; but he cannot, without doing so, wrest from the custody of the court the security. It is a familiar rule, that courts of equity look upon that as being" done which ought to have been done, and this they will enforce when the parties will not voluntarily do so. The certificate was passed in order to raise money upon it. The duty of Nash was to indorse it in such a way that the holder would have nothing to do but to be the owner of it, if that holder advanced his money upon the faith thereof. When the parties found the mistake which had been made, it was the duty of Nash to put his indorsement on the paper. Complainants bad parted with their money on the faith of the security, which security Nash had handed out for the very specific purpose of raising money thereon. As we have said, the equity branch of the court is the only one that can force that to be done which ought to be done and which the parties will not voluntarily do. The certificates of stock — in companies considered permanent — have become so common a security *532 upon which to raise money, that it will be difficult for courts not to include them in the category of commercial paper. They have not done so, and we cannot establish the rule, for we have not the authority. But we decided in the case of Talty vs. Freedman’s Trust Company that a bona fide holder for a fair valuable consideration could not be thrown into-the necessity of watching such instruments as closely as he would a paper that had long been settled as out of commercial rules. 1 MacA., 522. That case was affirmed recently by the court of last resort, though it may not have been for the same reasons we expressed. The chancellor was bound to make a decree appropriating the certificate to the security •it was put forth by the parties for, and the only way was to order a sale thereof, and the proceeds handed over to complainants, as they did not pray that defendant Nash should be required to assign.
The decree is therefore affirmed.